UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ARNOLD RISPLER, et al.,

                     Plaintiffs,                   **REPORT AND**
                                                                                 **RECOMMENDATION**
                                                                                       CV 04-1323 (DLI)(ARL)

     -against-

SOL SPITZ CO., INC., RETIREMENT TRUST,
et al.,

                     Defendants.
---------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

       By order dated April 22, 2005, District Judge Irizarry referred plaintiffs' motion to enforce the parties' January 21, 2005 settlement agreement to the undersigned for report and recommendation. For the reasons that follow, it is recommended that plaintiffs' application be granted subject to notification to absent participants of the discontinuation of this action and the terms of the settlement.

## BACKGROUND

       Plaintiffs, former employees of the Sol Spitz Company ("Company") and participants in the Sol Spitz Co., Inc. Retirement Trust and Profit Sharing Plans (collectively "Plan") commenced this action against the Plan and its sole trustee, Sheldon Spitz, alleging various breaches of fiduciary duty and mismanagement of Plan assets in violation of the Employee Retirement Income and Security Act of 1974 (ERISA), 29 U.S.C. 1001, *et seq*. These claims are based in part, upon Spitz's alleged failure as the Plan's fiduciary to distribute Plan assets after the sale of the Company in 1994. The Plan is also alleged to have incurred excessive losses and unnecessary expenses as a result of Spitz's mismanagement. In addition to seeking termination and distribution of the Plan's assets, the complaint seeks to hold Spitz personally liable for all losses

to the Plan as a result of his mismanagement.

On January 21, 2005, the parties appeared before the undersigned and, following negotiations reached a settlement agreement. Accordingly, with the plaintiffs' consent, defense counsel recited all material terms of the settlement on the record:

> THE COURT: Mr. Rubin, I understand that you're the one who is going to take responsibility for placing the material terms of the settlement on the record.
>
> MR. RUBIN: Right.
>
> THE COURT: All right. Would you please do that?
>
> MR. RUBIN: The settlement will be that plaintiffs will receive 50 percent of the value of the plaintiffs' account balances under the plan as of December 31, 2003, plus 50 percent of the value of the plaintiffs' account balances as of June 30, 2004. That value - - that number will be increased by attorney fees expenses which were deducted from the plan from January 1, 2004 through June 30, 2004.

(Tr. at 2-3).[1]

Consistent with the settlement agreement reached on January 21, 2005, the defendants were required to calculate plaintiffs' account balances as of December 31, 2004 and June 30, 2004 to determine the amount to be paid plaintiffs. Following the January 21, 2005 appearance, District Judge Irizarry ordered the parties to file a stipulation of discontinuance by February 22, 2005 "having reached a settlement agreement on January 21, 2005." (See Order, dated February 1, 2005). In response to that order, plaintiffs and defendants jointly moved before Judge Irizarry

---

[1] "Tr. at __" refers to the transcript of the January 21, 2005 conference before the undersigned.

for an extension of the deadline to file the stipulation of discontinuance. That application was granted and defendants were directed to produce the final calculations and payment by March 21, 2005. A stipulation of discontinuance was to be filed by March 31, 2005. (See Endorsed Order, dated February 8, 2005). By letter dated March 18, 2005, defendants sought and received a further extension of the deadlines and were ordered to "have the final calculations regarding the Stipulation of Settlement completed AND provided to M.J. Lindsay on or before March 31, 2005." (See Endorsed Order, Irizarry, D.J., dated March 21, 2005). Accordingly, by letter dated March 31, 2005, defendants provided the final payment calculations to Judge Irizarry. The calculations provided by defendants indicated that the distribution to plaintiffs in accordance with the settlement would be approximately $1,400,000. (See Rubin Letter, dated March 31, 2005). The March 31, 2005 letter also informed the court that:

> [T]he June 30, 2004 calculations do not take into account events that occurred from July 1, 2004 to the present. We have determined that the assets remaining in the pooled accounts are not sufficient to pay plaintiffs. Due to market losses during the period January 1, 2005 through March 31, 2005, the assets in the pooled accounts are less than the December 31, 2004. As a result, if [plaintiffs] were to receive a distribution of their accounts based on these prior valuation dates without reflecting current market conditions, the remaining Plan participants who are not [plaintiffs] would lose everything and there still would be a deficit which would bankrupt the Plan. This is not equitable and not a valid settlement.

(Id.). Thus, defendants requested that the terms of the settlement agreement be re-negotiated to reflect this drop in value.

In response to defendants' March 31, 2005 letter, plaintiffs moved for entry of a Settlement Judgment in favor of plaintiffs in the amount of $1,379,543. By Order dated April 20, 2005, Judge Irizarry referred these issues to the undersigned for report and recommendation. The parties appeared before the undersigned on May 2, 2005 to address this issue. After hearing

argument, the undersigned granted the defendants' request to file papers in support of their position and permitted plaintiffs' to submit responsive papers. These submissions were made in accordance with the expedited schedule set by the court.

## DISCUSSION

As noted above, the parties appeared before the undersigned on January 21, 2005 and placed a settlement agreement on the record. While defendants now argue, among other things, that the terms placed on the record were merely a "framework" for a settlement that was subject to approval by the Plan's actuary, the record clearly belies such claim. A review of the transcript confirms that the parties placed all "material terms" of the settlement on the record. (Tr. at 19). At no time did defendants indicate that the agreement was conditioned on the Plan actuary's approval of those terms. Rather, as expressly stated on the record, "the only thing that remains to be done to implement the settlement" is that the Plan's actuary "has to prepare the calculation." (Tr. at 19-20). In fact, the court confirmed that all parties agreed to the settlement, and following representations from all counsel that they were authorized to enter into the settlement, stated that: "The settlement is on the record. It's a binding settlement against each party. I am going to mark it a settled case." (Tr. at 25). Defendants concurred with this course of action. (Tr. at 25-26).

The actual amount to be paid plaintiffs was to be determined by the plan's actuary. Each side agreed that the valuation would be done by the actuary consistent with actuarial principles and plan provisions. Although the parties expressed uncertainty as to how two particular accounts would be treated in the valuation, defendants agreed to plaintiffs' suggested treatment of these accounts unless it would violate actuarial principles. As the undersigned noted on the record the settlement formula was agreed and all that was left to be done was to come up with the final

"number" (Tr. 20).[2]

Given the clearly articulated settlement terms and the absence of any reservation of right to renegotiate its terms, this court is compelled to conclude that but for the matters raised in paragraph "C" below this is a binding agreement. See, e.g., Janneh v. GAF Corp., 887 F.2d 432, 436 (2d Cir. 1989)("A settlement is a contract, and once entered into is binding and conclusive."), accord Janus Films, Inc. v. Miller, 801 F.2d 578, 583 (2d Cir. 1986), see also King v. Tully Construction Co., Inc., No. CV 98-3535 (ILG), 2001 WL 984910, at*1 (E.D.N.Y. July 9, 2001) ("A party that chooses to settle cannot be relieved of such choice merely because its decision to settle was incorrect.").

The court has also considered and rejects defendants' alternative arguments that they should be relieved from their obligations under the terms of the settlement agreement because the parties were mutually mistaken about the Plan's ability to pay the settlement or remain viable post-settlement. Further, the court finds that defendants' assertion that the settlement agreement should be set aside under the doctrine of impossibility of performance is wrong as matter of law. Each of these arguments will be addressed in detail below.

### A. Mutual Mistake

Defendants seek to avoid enforcement of the agreement on the ground that the parties were mutually mistaken about the Plan's ability to pay the agreed upon amount or the viability of the Plan post-settlement. The "mutual mistake" defense is properly applied "[w]here a mistake of *both* parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances. . . ." New York State Electric

---

[2] Significantly neither the "final" number or the formula used in reaching this number is in dispute.

& Gas Corp. v. Sarnac Power Partners, L.P., 117 F. Supp. 2d 211, 253 n.79 (N.D.N.Y. 2000) (citations omitted) (emphasis added), aff'd 267 F.3d 128 (2d. Cir. 2001). Reformation of a contract is available for mutual mistake provided that the party claiming reformation can "'show in no uncertain terms, not only that mistake . . . exists, but exactly what was really agreed upon between the parties.'" Loewenson v. London Mkt. Co., 351 F.3d 58 (2d Cir. 2003) (citations omitted). In addition, "to reform a contract, mutual mistake must be established by clear and convincing evidence." Collins v. Harrison-Bode, 303 F.3d 429, 435 (2d Cir. 2002).

Here, defendants assert that they were mistaken as to the both the Plan's ability to pay the agreed amount based on an "unforeseen" decline in the stock market and the Plan's viability post-settlement. Despite defendants' unsupported assertions to the contrary, these alleged "mistakes" are unilateral and, as such, there is no basis for reforming the agreement due to a mutual mistake. Collins, 303 F.3d at 435 ("Unilateral mistake alone will not justify reformation of an instrument") (citations omitted). Moreover, stock market losses were hardly an unforseen event since the defendants had previously abandoned an oral settlement agreement reached in October 2003 for precisely this reason. (See Joint Status Report, dated November 1, 2004). Given that the methodology for calculating the settlement amount was clear, unambiguous and explicitly stated on the record by *defense counsel*, who entered this agreement unconditionally and with full knowledge of the stock markets potential impact, reformation is not available on the basis of mutual mistake. See Loewenson, 351 F.3d at 62 (affirming district court's refusal to reform settlement agreement on ground of mutual mistake where parties explicitly agreed to the methodology for calculating settlement amount despite the fact that the methodology was flawed).

B.   **Impossibility of Performance**

Defendants also argue that the settlement agreement should be set aside because an unforeseen occurrence has made its performance impossible. (Def. Mem. at 8-9). The gravamen of defendants' claim of impossibility is that the Plan has insufficient funds to pay the agreed amount "[d]ue to an unforeseen drastic drop in the stock market beginning in early March [2005] and continuing to the present . . . ." (Def. Mem. at 4, 8). In support of this claim, defendants have submitted a computer print out of a May 2, 2005 Dow Jones Industrial Average graph report. (See "Exhibit D" to Def. Mem). This graph, however, is of little value in determining the performance of the fund's stock assets. Notably absent from the defendants' submission is any evidence of the current valuation of the Plan's assets. The only valuations provided to the court are based on the Plan's assets as of June 2004, making it impossible for the court to assess counsel's claim that the fund will be bankrupted by this settlement agreement. (See Exhibits to Def. March 31, 2005 letter). Although defendants have been given ample opportunity to supply this data they have chosen not to do so preferring instead to rely on counsel's allegation of financial "impossibility." (See Pl. Aff. in Support of Entry of Settlement Judgment at ¶¶ 5 and 17; Tr. of May 2, 2005 conference before the undersigned at 11-13). Given that the "burden of proof rests on the party seeking to assert the impossibility defense," defendants' failure to provide current valuation data compels the undersigned to recommend that there is no basis to set aside the settlement agreement on the ground of impossibility. See United States v. Int'l Bhd. Of Teamster, 816 F. Supp. 864, 873 (S.D.N.Y. 1992)(citing United States v. Rylander, 460 U.S. 752, 757(1983).

Moreover, even if the defendants had provided evidence that the Plan's current assets are insufficient to pay the agreed amount, the defendants' performance under the agreement would

7

not be excused based on "impossibility."   The law is clear that performance of a contract is not excused "where impossibility or difficulty of performance is occasioned only by financial hardship, even to the extent of insolvency or bankruptcy."  See, e.g., 407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp., 23 N.Y.2d 275, 281 (1968); see also Health-Chem Corp. v. Baker, 915 F.2d 805 (2d Cir. 1990) (performance of settlement agreement not excused where decline in the stock market made performance of contract more onerous); In re Regency Holdings, Inc., No. 00 CV 8115 (HB), 2001 WL 1033429, *4 (S.D.N.Y. Sept. 7, 2001).  Finally, the defense of impossibility requires a showing that the party seeking to avoid the contract "took virtually every action within its power to perform its duties under the contract."  Health-Chem Corp., 915 F.2d at 810, (citing Kama Rippa Music, Inc. v. Schekeryk, 510 F.2d 837, 842-43 (2d Cir. 1975)).  Here, defendants have presented no evidence in this regard.  Accordingly, the undersigned finds that there is no basis for excusing defendants from performance of their obligations pursuant to the settlement agreement on the ground of impossibility of performance.  Health-Chem Corp., 915 F.2d at 810 ("[Appellant] makes no claim that it took virtually every action within its powers to perform its duties under the contract and therefore cannot assert the defense of impossibility.").

    **C.**    **Obligation to Notify Absent Plan Participants of the Discontinuance and Agreement**

Plaintiffs vehemently oppose any delay in implementing  the settlement agreement asserting that would further jeopardize the current Plan assets.  While the court agrees that delay may jeopardize plaintiffs' ability to collect,  delay is warranted for the reasons described below.

Although neither side raised the issue, the undersigned  requested that plaintiffs' counsel clarify her obligations to absent plan participants in light of the agreement reached.  This request was prompted by  a  review of the complaint  which revealed that plaintiffs brought this case  as a

derivative action on behalf of the Plan under sections 502(a)(2) and 502(a)(3). The complaint does not assert any claims for individual relief.

Rule 23.1 engrafts a number of procedural requirements on derivative suits. In pertinent part Rule 23.1 provides:

> The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

By its terms, Rule 23.1 applies only to derivative actions brought by shareholders. A review of the case law, however, indicates that parties who commence a derivative action under certain provisions of ERISA may be subject to the requirements of Rule 23.1. See Diduck v. Kaszycki & Sons Contractors, Inc., 874 F2d 270 (2d Cir. 1992)(Rule 23.1 applies to derivative actions brought under Section 502 (g)(2)); Coan v. Kaufman, 349 F. Supp. 2d 271 (D.Conn. 2004) (derivative action brought under 502 (a)(2) should comply with the general principles of Rule 23.1); but see Kayes v. Pacific Lumber Co., 51 F.3d 1449, 1462 (suit by plan beneficiaries to enforce plan against fiduciaries not subject to 23.1); Bickley v. Caremark RX, Inc., 361 F. Supp. 2d 1317 (N.D. Ala. 2004)(at odds with ERISA statutory scheme to graft onto ERISA enforcement action additional requirements of 23.1); Thompson v. Avondale Industries, Inc., 2001 WL 1543497 (E.D. La. 2001)(rule 23.1 not applicable to action brought under 502(a)(2)).

While it is far from clear whether Rule 23.1 applies to this action, it would be prudent in light of the allegations and the procedural posture of this case for the court to apply some of its safeguards before entering judgment in this case. It now appears that neither side may have considered their obligations to absent participants in reaching this agreement. Indeed, defense counsel in his correspondence to the court dated May 12, 2005, contends that plaintiffs' counsel has abrogated her obligations to absent participants by seeking enforcement of this agreement.

The thrust of counsel's argument is that the agreement harms the absent participants by giving the named plaintiffs more than they are entitled to. Incredibly, defense counsel completely ignores the fact that defendants as plan fiduciaries had primary responsibility for insuring that the agreement was fair to all plan participants. Curiously, plaintiffs' counsel in a status letter addressed to the court dated November 1, 2004, acknowledged that the derivative nature of this suit prevented her from entering a virtually identical agreement because of potential harm to absent participants. While the agreement reached in this matter certainly vindicates rights provided for in ERISA, which empowers individual plan participants to bring suit to recover benefits due them (see Section 502 (a)(1)(B)), it provides no benefit to the absent plan participants. Although plaintiff's counsel correctly points out that this settlement does not impair the rights of absent plan participants who might seek recovery of their own benefits, it may nonetheless impact on their ability to recover. Accordingly, it is recommended that notice of the terms of this agreement and the discontinuance of this action be provided to absent participants before entry of a final judgment.

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within 10 days from service of this Report. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. June 30, 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993);

*Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992).

Dated: Central Islip, New York
　　　　May 18, 2005

　　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　ARLENE R. LINDSAY