UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ARNOLD RISPLER et al.,                              :
                                                    :
                    Plaintiffs,                     :         **ORDER**
                                                    :
         -against-                                  :         04-CV-1323 (DLI)(ARL)
                                                    :
SOL SPITZ CO., INC. et al.,                         :
                    Defendants.                     :
----------------------------------------------------------------x

**DORA L. IRIZARRY, U. S. District Judge:**

The parties in the instant E.R.I.S.A. case arrived at a settlement agreement ("Agreement") during a conference held before Magistrate Judge Arlene R. Lindsay on January 21, 2005. The express terms of the Agreement were placed on the record in open court. Two months later, defendants, Sheldon Spitz ("Spitz"), the Sol Spitz Company ("Company"), and the Sol Spitz Co., Inc. Retirement Trust and Profit Sharing Plans (collectively "Plan"), moved the district court to vacate the Agreement. The matter was referred to Magistrate Judge Lindsay who issued a Report and Recommendation ("R & R") on May 18, 2005 finding the existence of an enforceable settlement agreement and recommending that the absent plan participants be notified of the Agreement and the discontinuance of the action. Both sides filed objections to the R & R on May 27, 2005. Plaintiffs, Arnold Rispler, Joyce Erkus, Ellen Keller, Oral Walwyn, George Brossseau, William G. Reynolds, Dennis A. Dunlop, Gary Ingoldsby, Claudia McGee, and Carol Lanzarone (collectively "plaintiffs") now "renew" their motion for a Temporary Restraining Order ("TRO"), originally made on January 14, 2005, seeking to prohibit Spitz from transferring any funds from or further dissipating the Plan assets—assets that are the subject of the Agreement. For the reasons that follow, plaintiffs' motion for a TRO is denied without prejudice.

1

The procedural history of the instant case is a long and convoluted one made so, primarily, by plaintiffs' counsel's repeated mis-characterization of the record.

Plaintiffs initially applied, ex parte, for a preliminary injunction on September 13, 2004. The court set a motion schedule and held that schedule in abeyance pending the outcome of settlement negotiations. When the parties failed to reach an agreement, plaintiffs' counsel, Ms. Victoria Quesada, withdrew the motion for a preliminary injunction and requested, instead, a schedule to file a motion for summary judgment.[1] Several letters from Ms. Quesada immediately followed complaining of unsuccessful attempts to settle, seeking discovery, and requesting permission to file dispositive motions.[2] In light of these letters, the court finds Ms. Quesada's allegations that plaintiffs were somehow forced by the court into a settlement agreement or prevented from seeking equitable relief exasperating, to say the least.[3]

By Order dated December 9, 2004, the court scheduled a pre-motion conference for January 10, 2005. Ms. Quesada, by letter dated December 14, 2004, and with defense counsel's consent, wrote to the court requesting a postponement of the pre-motion conference in light of the impending settlement conference scheduled for January 24, 2005 before M.J. Lindsay. The court granted her

---

[1] "[W]e ask that the Court set a motion schedule. At this time, we will be seeking summary judgment rather than a preliminary injunction." (Status Report dated November 1, 2004.)

[2] "Having withdrawn from the last settlement, the defense has now left us 'at the alter' [sic] three times . . . we respectfully ask your Honor to refer this matter to the Magistrate for a discovery schedule. In the near future, we will ask the Court's permission to file motions." (Letter from Ms. Quesada to the court of November 3, 2004.)

"Regarding settlement, we note that defendants unilaterally withdrew from our last negotiated settlement." (Letter from Ms. Quesada to the court of November 19, 2004.)

"We respectfully submit that no settlement negotiations nor any dispositive motions can take place without disclosure . . . ." (Letter from Ms. Quesada to the court of December 7, 2004.)

[3] "We entered into the settlement at the strong urging of the Court after being continuously thwarted in our efforts to seek equitable relief." (Letter from Ms. Quesada to the court of May 19, 2005.)

2

request.

On or about January 14, 2005,[4] approximately ten days before the settlement conference, Ms. Quesada filed an ex parte motion for a TRO. While that motion was pending, seven days later, on January 21, 2005, M.J. Lindsay's chambers informed the court that the parties had reached a settlement. In light of the parties' Agreement, the court did not issue a decision on plaintiffs' motion.

By Order dated February 1, 2005, the court directed the parties to file a stipulation of discontinuance by February 22, 2005. By letter dated February 3, 2005, Ms. Quesada acknowledged the Agreement but requested more time to file the stipulation of discontinuance. Ms. Quesada made no mention of what she now claims is an outstanding motion for equitable relief.

On March 31, 2005, defendants sought to vacate the Agreement. In response, plaintiffs made a motion to enforce the settlement agreement. On May 18, 2005, M.J. Lindsay issued a R & R finding an enforceable settlement. Both parties have since filed objections.

On May 19, 2005, in spite of M.J. Lindsay's finding, Ms. Quesada filed a letter "renewing" plaintiffs' ex parte motion for a TRO "filed" on January 14, 2005.[5] In this letter, Ms. Quesada complained that the plaintiffs had been concerned about the solvency of the Plan from the beginning of the litigation and for that reason had sought, "on four separate occasions, injunctive relief to

---

[4] The docket sheet reflects that a sealed document, the ex parte motion itself, was filed on January 20, 2004. Ms. Quesada has variously indicated that the ex parte motion was filed on January 14, 2005 and on January 19, 2005. *See* Letters from Ms. Quesada to the court dated April 19, 2005 and May 23, 2005, respectively. Though undeserving, Ms. Quesada has been given the benefit of the doubt.

[5] Although circumstances had changed considerably since the time Ms. Quesada originally filed this motion, she has made no effort to supplement her papers.

3

preserve the corpus of the entire Plan assets. On all four occasions, the request was deflected."[6] It is this "renewed" application that is presently before the court.

## Discussion

In their application for a TRO, plaintiffs argue that Plan assets should be frozen in light of Spitz's alleged unauthorized expenditures. Specifically, plaintiffs contend that Spitz has used the Plan's assets to pay for attorney's fees generated in defense of the instant litigation in violation of the Plan terms, two court orders, his fiduciary duty, and "the settled law of this land." (Quesada Affm. ¶ 18.)[7] Plaintiffs fear that Spitz's continued "unauthorized" expenditures will leave the Plan bereft of sufficient funds to distribute in accordance with the settlement agreement. Defendants oppose plaintiffs' request for a TRO.

In order to obtain a TRO, plaintiffs must show: (1) that absent such an order, they are likely to suffer irreparable harm; and (2) either a likelihood of success on the merits or "sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the [applicant's] favor." *In re Feit & Drexler, Inc. v. Drexler*, 760 F.2d 406, 416 (2d Cir. 1985) (citations omitted); *see also Jackson Dairy, Inc., v. H.P. Hood & Sons, Inc.*, 596

---

[6] The "first" motion for a preliminary injunction was served on opposing counsel but never filed with the court. Accordingly, the docket sheet reflects the absence of any court rulings relating to this "motion." With respect to this same "motion," Ms. Quesada claims that the District Judge previously assigned to this case "stayed" the motion. However, no such order appears on the docket sheet.
    The "second" motion that she refers to, "ECF #19", is the motion for which the court set a schedule and then held that schedule in abeyance pending settlement negotiations; Ms. Quesada ultimately withdrew this motion on November 1, 2004.
    The "third" motion for injunctive relief is cited as "ECF #22". Docket entry no. 22 refers, not to a third motion, but to court action taken in connection with the "second" motion for injunctive relief.
    The "fourth" motion is the subject of the instant decision and order.

[7] At the January 21, 2005 settlement conference before M.J. Lindsay, as a term of the settlement agreement, defendants agreed to replenish the Plan with funds previously deducted as attorney's fees. (Tr. at 2-3.)

4

F.2d 70, 72 (2d Cir. 1979).

Normally, irreparable harm cannot be established where, as here, a party's claimed loss can be adequately remedied by a monetary award. *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985). However, if plaintiffs demonstrate defendants' intent to "frustrate any judgment on the merits, by transferring assets out of the jurisdiction," then irreparable harm is deemed established and preliminary injunctive relief is available. *Id.* (internal citations and quotation marks omitted).

In *Feit & Drexler*, the Second Circuit affirmed the issuance of a TRO freezing defendant's assets where the movant had established, through affidavits and depositions, that defendant had falsely denied the existence of Swiss bank accounts. The court reasoned that a TRO was appropriate in light of defendant's "blatant disregard for court orders" and her obligation to provide truthful testimony. The TRO was deemed necessary to "prevent a potential judgment from becoming ineffectual." *Feit & Drexler*, 760 F.2d at 411.

Here, although the A.G. Edwards account statements[8] reflect Spitz's transfer of funds from one Plan account to another and the creation of a separate account for his own benefit, such transfers are not "out of the jurisdiction" and do not reflect an imminent threat of being transferred beyond the court's reach. Plaintiff's contention that Spitz's purported violations of two separate court orders reflect an intent to frustrate a potential judgment is without merit. The first "order" plaintiffs refer to relates to a status conference held before U.S. District Judge Sandra J. Feuerstein on June 21, 2004 where, plaintiffs contend, Judge Feuerstein prohibited Spitz from using Plan funds to pay for attorney's fees or from removing the Plan funds altogether. Defendants deny the existence of such an order. The conference before Judge Feuerstein was not transcribed, and no such order is

---

[8] A.G. Edwards is the brokerage firm managing the Plan's accounts. The account statements were obtained by a subpoena duces tecum issued by the Hon. Arlene R. Lindsay on December 8, 2004.

5

reflected on the docket sheet. This court's investigation revealed that such an order never existed and, accordingly, made this finding on the record at a September 28, 2004 conference.[9] That ruling notwithstanding, plaintiffs continue to refer to a June 21, 2004 "order."

With respect to the second ostensible violation of a court order, plaintiffs refer to statements made by M.J. Lindsay during a conference held on December 8, 2004. In her affidavit, Quesada quotes the following:

> THE COURT: All right. So let me do the following. I'm not staying discovery. I'm entering the discovery schedule that we agree to today but here's what I am recommending. I'm recommending that the interrogatories be postponed for the moment and I'm urging counsel on the defendant's side of it not generate any more legal fees in this case. That is, if you have to write a letter that's fine. I don't see why you'd have to write a letter.
> The next set of legal fees should occur on January the, what date did I say — January 24th is the next time that you're going to start billing again is what I'd like to see. I mean, it may be that there may be phone calls. I mean, I know you're going to have to confer with Mr. Site [*sic*] to explain some things and those are going to be necessary. But whatever has to be done towards achieving settlement you should do but try not to do new things. Do you get my drift?

(Conference Tr. at 17-18.)

Ms. Quesada cites to the foregoing in effort to establish that M.J. Lindsay issued an order prohibiting Spitz from using Plan assets to pay for attorney's fees. However, Mr. Irwin Rubin, the Plan's attorney, unsuccessfully attempted to clarify that issue:

> MR. RUBIN: Well, just a comment on the legal fees. First of all, legitimate legal fees have always been recognized, paid out, have been paid out from plan assets. My field is –
> THE COURT: Stop, stop. I'm not addressing that issue today.

(Conference Tr. at 18.)

---

[9] Given the absence of a transcript, this court contacted Judge Feuerstein to determine whether any record of this alleged prohibition exists. It does not. Nor does Judge Feuerstein have an independent recollection of issuing this "order."

6

Clearly, M.J. Lindsay issued no such order.

In light of the foregoing, the court concludes that, based on plaintiffs' submission, plaintiffs have failed to meet their burden for a TRO. Specifically, plaintiffs have failed to demonstrate that Spitz has attempted to remove assets from the court's jurisdiction, nor have they demonstrated Spitz's "blatant disregard for court orders" *Feit & Drexler*, 760 F.2d at 411. Plaintiffs thus have failed to show a threat of irreparable harm as required for a TRO.

Moreover, although plaintiffs allege that they have been concerned about the Plan's solvency from the beginning of this litigation, they failed to include a prohibition against further Plan disbursements as a term of the settlement agreement. Plaintiffs now seek to add this term to the Agreement by way of a TRO. If the terms of a settlement agreement are unambiguous, "courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Red Ball Interior Demolition v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999). The Agreement has not yet been adopted by this court, as both parties have only recently filed objections.[10] Assuming the R & R is adopted, the number of Plan participants choosing to settle may or may not increase and, consequently, the amount of money needed to satisfy the terms of the settlement agreement remains unclear. Until these preliminary issues are resolved, the application for a TRO is not ripe for adjudication. "The basic rationale underlying the doctrine of ripeness 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements....'" *In re Drexel Burnham Lambert Group, Inc.*, 995 F.2d 1138, 1146 (2d Cir. 1993) (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 148 (1967)). Therefore, the court has confined its

---

[10] The time for filing objections expires June 2, 2005. The parties filed their objections on May 27, 2005.

7

involvement to deciding the merits of the TRO.

Because plaintiffs have failed to make the necessary showing of threat of irreparable harm, their a request for a TRO is denied without prejudice.


DATED:   Brooklyn, New York
         May 31, 2005

_____
DORA L. IRIZARRY
United States District Judge