```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ARNOLD RISPLER et al.,                          :
                    Plaintiffs,                 :       **MEMORANDUM AND ORDER**
                                                :
          -against-                             :       04-CV-1323(DLI)(ARL)
                                                :
SOL SPITZ CO., INC. et al.,                     :
                    Defendants.                 :
-------------------------------------------------------x
```

**DORA L. IRIZARRY, U.S. District Judge:**

By order dated July 11, 2006 and modified August 29, 2006, this court appointed James F. Castro-Blanco, Esq. as special master to "perform an accounting of all the retirement trust accounts and profit sharing plans relating to the instant litigation to determine whether earnings, forfeiture, and losses were properly allocated to the accounts of all participants." Order Appointing Special Master (ECF docket no. 121), ¶2. By letter dated September 15, 2006, Andrew B. Schultz ("Schultz") and Scott M. Zucker ("Zucker"), on behalf of themselves as defendants and all other defendants in this matter (collectively referred to as "defendants") requested that the court use "its inherent power" under Fed. R. Civ. P. 60(b) to "withdraw the appointment of a special master" and "stay the order for the appointment and payment of a special master," " in the interest of justice." (ECF docket no. 138).[1] The request was opposed by all plaintiffs in a letter dated September 18, 2006 (ECF docket no. 139) and the opposition was responded to by Zucker, on behalf of all the defendants, on September 19, 2006 (ECF docket no. 140). McDonough again joined the request by letter dated September 25, 2006 and asked the court to reconsider the apportionment of responsibility for the special master's fees during the pendency of the action (ECF docket no. 153)

---

[1]     The other defendants are Sheldon Spitz ("Spitz"), the Sol Spitz Co, Inc. Retirement Trust, ("Trust"),  the Sol Spitz Co., Inc. Profit Sharing Plan ("Plan") as well as Chris G. McDonough ("McDonough") and Danziger & Markhoff, LLP.

and Danziger & Markhoff joined McDonough's application by letter on October 10, 2006. (ECF docket no. 155). For the reasons set forth below, defendants' request is denied in its entirety.

As an initial matter, Rule 60(b) does not govern the defendants' request. Rather, defendants are referring to the "plenary power of the court to review its interlocutory orders to afford such relief from them as justice requires." *Wanamaker v. Columbian Rope Co.*, 907 F.Supp. 522, 527 (W.D.N.Y. 1995). This power is separate and apart from the court's Rule 60(b) powers, which only apply to a "final judgement." *Krome v. Merrill Lynch & Co., Inc.*, 110 F.R.D. 693, 694 (S.D.N.Y. 1986); Fed.R.Civ.P. 60 advisory committee's note, 1946 amendment ("interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."). Likewise, although not invoked by defendants, Rule 54(b) provides, in relevant part, that an interlocutory "order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed.R.Civ.P. 54(b). Accordingly, defendants request will be analyzed under these two provisions.

Pursuant to Rule 54(b), the court may revise a prior order if there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992). Similarly, the court's plenary power to review its own interlocutory orders may be applied in circumstances "when it is consonant with justice to do so." *U.S. v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1983). Rule 54(b) permits an order to be revised "anytime before the entry of judgment adjudicating all the claims." Fed. R. Civ. P. 54(b). Similarly, the court may exercise its plenary power to review its own orders "any time" the court has jurisdiction over the case. *See First City,*

*Texas-Houston, N.A. v. Rafidain Bank,* 131 F.Supp.2d 540, 543 (S.D.N.Y. 2001). The defendants made this request for the withdrawal of the order appointing the special master more than sixty days after the special master's appointment and seventeen days after the court established the basis and terms of the special master's compensation – but immediately after defendants received the special master's first invoice. Even though the request was made while the court still has jurisdiction over the case and before the claims have been fully adjudicated, the timing of this request is questionable, and the entire request may simply be an acute case of sticker shock.[2] Moreover, under most circumstances (and unless the court specifically directs otherwise) motions for reconsideration of a court order must be made within ten days after the entry of the order. *See* Local Civil Rule 6.3. Thus, defendants' request is denied as untimely. However, to place the defendants at ease with regard to the appointment of the special master, and to correct some misstatements and distortions put forward by defendants, the court will, nevertheless, address the merits of the request.

Defendants request that the court withdraw or stay the order appointing the special master because they allege that (1) none of the parties requested a special master; (2) the appointment of the special master was made before the defendants' time to answer had expired; (3) the court did not identify "any specific need" for a special master and did not set guidelines for a special master; (4) the terms and the basis of the special master's compensation are too generous and the allocation of responsibility for payment of the special master's compensation is unjust; and (5) the special master's relationship with the court makes his appointment improper. The court will address each

---

[2] The court finds this surprising because the defendants, with the exception of Spitz, the Plan and the Trust, are all attorneys and are well acquainted with the sometimes high cost of quality legal services. In fact, part of the plaintiffs' claim against the defendants is that the plan has been depleted by over $900,000 because funds have been diverted to defendants, apparently as payment for legal services. Transcript of the June 19, 2006 status conference ("Tr.") 9:5-6; 10: 1-6; 16:3.

of these claims in turn.

(1) Appointment of a Special Master

Defendants assert that none of the parties requested a Special Master. They are correct. In fact, at a conference before the court on June 19, 2006, plaintiffs requested the much more drastic remedy of the appointment of an independent trustee to oversee the fund for the duration of this litigation due to Spitz's alleged mismanagement. (Tr. 10:5-16). Defendants vigorously opposed the appointment of an independent trustee. The court found that, because there was no finding of wrongdoing on the part of defendants, it would be premature to appoint an independent trustee. (Tr. 16:4-9). Rather, the court suggested the appointment of a Special Master. The transcript of the June 19, 2006 conference reads as follows:

> COURT: It seems to me, unless I can hear some valid objection as to why the court should not appoint a Special Master at this juncture, that would be an appropriate way to go.
>
> * * * *
>
> COURT: So, it does also seem appropriate, if counsel wishes, to file an amendment to the amended complaint; that the court will grant permission to do so. This way, the defense can respond to the complaint. In the interim, the court can go about the business of appointing a Special Master and letting counsel know who that will be. Of course, the order will be made available to counsel. I'll hear the parties with respect to that proposal by the court. Mr. Zucker?
>
> ZUCKER: No objection, your Honor.
>
> MULTER: No objection.

(Tr. 17:10-13; 18:1-11).

In their September 19, 2006 letter (ECF docket no. 140), defendants reinterpret this exchange and claim that they were actually only consenting to the procedure by which the appointment would be made, not the actual appointment. However, the plain language of the transcript (as well as the

4

court's contemporaneous notes of the hearing) unequivocally show that the parties consented to the court "appointing a Special Master and letting the parties know who that will be." (Tr. 18:7). Moreover, the appointment of the special master was clearly not contingent upon the parties first filing and answering an amended complaint. The court rejects the notion that a lawyer, seeing an ambiguity, would answer "no objection" and let the ambiguity lie unresolved. Moreover, any ambiguity was resolved by the July 11, 2006 order appointing Mr. Castro-Blanco as Special Master. The defendants were notably silent upon receiving this order. The court believes that if the defendants had really agreed only to the procedure of appointing the Special Master, rather than the actual appointment of one, they would have reacted very differently to the July 11, 2006 order. It is abundantly clear that the parties consented to the appointment of the Special Master on June 19, 2006, and further consented to allow the court to select the master.[3]

(2)     Timing of the appointment of the Special Master

The June 19, 2006 conference was attended by defendants Schultz, and Zucker, as well as Irwin N. Rubin of Danziger & Markhoff.[4] At the conference, plaintiffs' counsel made a presentation regarding what he alleged to be impermissible payments of ERISA protected funds to counsel for

---

[3]     Pursuant to Rule 53(b)(1), the parties are permitted to suggest candidates for Special Master. In reviewing the transcript, it appears that the court neglected to advise the parties of their right to suggest a Special Master and the court did not receive any suggestions. While this omission is regretted, familiarity with the rules is assumed. Likewise, the parties did not object to the selection of Mr. Castro-Blanco as the Special Master nor request the opportunity to suggest a different Special Master either upon the issuance of the court's order appointing the Special Master or within 10 days of its issuance, as required under Local Rule 6.3.

[4]     Rubin did not attend the June 19, 2006 conference as an attorney, but rather as a spectator. (Tr. 11:20-24). McDonough did not attend the conference.

defendant Sheldon Spitz, namely Zucker, Shultz, McDonough and Danziger & Markhoff. (Tr. 8:10 - 10:7). Plaintiffs were given permission to file an amended complaint by July 7, 2006 to assert whatever new claims they may have and to add defendants, as necessary. (Tr. 18:2-3). The amended complaint was initially served on July 7, 2006, and a corrected amended complaint was served on July 14, 2006. (ECF docket no. 122). The parties (now including Zucker, Shultz, McDonough and Danziger & Markhoff) consented to extend the defendants' time to answer or otherwise move to September 12, 2006. Later, Zucker, Shultz, McDonough and Danziger & Markhoff requested another extension, which the court granted. (ECF docket nos. 124, 135, 137). Defendants claim that it was inappropriate to appoint a Special Master on July 11, 2006 because "plaintiffs. . . had not served any amended complaint, and had not stated any intention of naming attorneys as defendants." *See* September 15, 2006 letter (ECF docket no. 138). As the amended complaint was initially served July 7, 2006, four days before the appointment of the Special Master, this claim is without merit. Further, with the exception of McDonough, who was not present at the June 19th conference, any assertion that the defendants were blind sided by the allegations in the amended complaint is disingenuous. From the record, as well as the court's contemporaneous notes, its clear that defendants were placed on notice that they would be added to the complaint. It is also clear that both the parties and the court understood that the case would proceed normally (the complaint would be amended to include the new defendants) notwithstanding the appointment of the Special Master. In any event, all the defendants (McDonough and Danziger & Markhoff included) are protected from ay potentially inequitable result by the August 29, 2006 modification to the July 11, 2006 order. The modification states that "the parties' ultimate responsibility for the Special Master's compensation, fees and costs shall be resolved by the court at the conclusion of this

6

matter." (August 29, 2006 order amending ECF docket no. 121). Thus, although the defendants are currently required to pay the costs of the Special Master, the ultimate distribution of responsibility for the Special Master's fees and costs has yet to be determined.

(3)     Guidelines for the duties of a Special Master

Pursuant to Rule 53(2)(A), the order appointing the Special Master must state "the master's duties." The defendants claim that the court did not "set any proposed specific guidelines for the master." *See* September 15, 2006 letter (ECF docket no. 138). However, the July 11, 2006 order specifically states that the Special Master is to "preform an accounting of all the retirement trust accounts and profit sharing plans relating to the instant litigation to determine whether earnings, forfeitures, and losses were properly allocated to the accounts of all participants." The order goes on to state that "[t]he Special Master shall oversee all issues relating to the conduct of the accounting in this litigation and shall proceed with diligence and in such manner as will minimize costs." Similarly, when the parties consented to the appointment of the Special Master on June 19, 2006, the court clearly stated the Special Master's duties:

> However, the case may be ripe for the appointment of a Special Master and pursuant to Federal Rule of Civil Procedure 53, one, it seems to me this will provide an independent person to do what they need to do . . . but also the Special Master will be able to subpoena any additional materials that he or she may need and as a preliminary matter, to do an accounting and perhaps to give the court a history of this plan from the beginning. . . . Secondly, to give the court a running history of the disbursements that have been made in this case.

Tr. 16:10-25. The defendants' claim that the Special Master is operating without "guidelines" is without merit.

Defendants also claim that a Special Master cannot be appointed absent "some exceptional condition" or "complicated issues." *See* September 15, 2006 letter (ECF docket no. 138).

Defendants are incorrect. Rule 53 was amended in December 2003 to "provide more flexibility in the use of Special Masters, permitting them to be used on an as-needed basis with the parties' consent or by court order when exceptional conditions apply." Shira A. Scheindlin & Jonathan M. Redgrave, *Revisions in Federal Rule 53 Provide New Options for Using Special Masters in Litigation*, 76-Jan N.Y. St. B.J. 18 (2004). Thus, when the parties consent to a Special Master, as is the case here, there is no requirement that exceptional conditions be present. Moreover, even if the parties do not consent to a Special Master, there is no requirement that exceptional circumstances be present when a Special Master is appointed for the purpose of providing an accounting. *Id.* at 22 ("[i]n matters of accounting or difficult computation of damages, use of a master is appropriate regardless of whether exceptional conditions are present."); Fed R. Civ. P. 53(1)(B).

(5)     Amount and allocation of responsibility for Special Master's fees.

Defendants object to the basis and terms of the Special Master's compensation set by the court pursuant to its power under Rule 53(1) and (2). Defendants first complain that the Special Master's $300 dollar an hour rate was set without their input. *See* September 15, 2006 letter (ECF docket no 138). However, Rule 53 does not require the court to solicit input from the parties regarding compensation, unless and until the the court decides to alter the Special Master's compensation. *See* Fed R. Civ. P. 53(h)(1). The Special Master's initial compensation, fixed by the court, must be stated in the order of appointment and must take into account "the fairness in imposing the likely expenses on the parties and must protect against unreasonable expense or delay." Fed R. Civ. P. 53(a)(3). Similarly, the court is required to consider "the nature and amount of the controversy, the means of the parties and the extent to which any party is more responsible than the other parties for the reference to a master" in allocating responsibility for the Special Master's

compensation among the parties. Fed R. Civ. P. 53(h)(3). Finally, Rule 53(h)(1) permits the court to fix compensation "before or after judgement." Fed R. Civ. P. 53(h)(1).

Despite defendants' insinuation to the contrary, the court has fully complied with Rule 53. The July 11, 2006 order appointing the Special Master stated that the Special Master "shall proceed with diligence and in such a manner as will minimize costs." (ECF Docket no. 121). After a thorough review of Mr. Castro-Blanco's qualifications, the court established a rate of $300 per hour in the August 29, 2006 modification to the July 11, 2006 order. Similarly, the court determined that the defendants should "pay these costs in equal shares during the pendency of the master's appointment." The court made this determination by first examining the means of the parties. In this case, some of the plaintiffs are destitute and have twice requested special dispensation from the fund. (ECF docket no. 101 and 141). Accordingly, the court found that plaintiffs are unable to pay the costs of a Special Master at this time. Second, the court examined which parties were more responsible for the reference to a master. In this case, the defendants' failure to provide an accurate accounting to plaintiffs in an earlier stage of the litigation caused the need for a Special Master. (Tr. 7-8); Fed.R.Civ.P. 53(h) advisory committee's note, 2003 amendments ("a party whose unreasonable behavior has occasioned the need to appoint a master. . .may properly be charged all or a major portion of the master's fees.").

Moreover, as noted above, although defendants are responsible initially for the Special Master's fees, the order appointing the Special Master provides that "the parties' ultimate responsibility for the Special Master's compensation, fees and costs shall be resolved by the court at the conclusion of this matter. Final allocation of these amounts shall be subject to taxation and costs at the conclusion of the case at the discretion of the court." *See* Order Modifying ECF docket

9

no. 121. Thus, at the end of the case, the court will reassess whether the costs should be redistributed among the defendants and whether the plaintiffs should bear any part of the cost. Finally, defendants' insinuation that there is some impropriety in the court's "retroactive" approval of the Special Master's bills is simply incorrect. The Rule 53(h)(1) permits the court to fix the Special Master's compensation (on the basis and terms stated in the order) even after the Special Master has completed *all* its work.

It should be noted that, in an effort to minimize the costs, the court has reviewed and approved each of the Special Master's billing entries and has been in constant contact with the Special Master to monitor his progress.[5] Furthermore, the fund is currently frozen, preventing distributions to defendants and plaintiffs alike. As there has been no showing of wrongdoing and defendants have consistently stated that there has been none, a prompt resolution of this matter is in their interest. The Special Master will assist in concluding this matter as expeditiously as possible. Defendants' new found opposition to the Special Master (or more specifically the Special Master's fees) may be penny wise but pound foolish.

(6) The Special Master's relationship with the court

Without regard for the governing law or facts, defendants insinuate that the appointment of Mr. Castro-Blanco is inappropriate because he is an acquaintance of the federal district judge to whom this case is assigned. There is nothing improper in Mr. Castro-Blanco's appointment. In fact, Rule 53

> does not indicate how masters were to be chosen by courts, and thus courts have selected masters in various ways. Some judges simply select a master from among professional acquaintances, persons whose professional skills they admire and whose

---

[5] The court notes that prior to reviewing and approving the Special Master's fees, the court also reviewed and filed under seal the Special Master's progress report.

integrity and loyalty they trust.

Margaret G. Farrell, *Special Masters in the Federal Courts Under Revised Rule 53: Designer Roles*, SL083 ALI-ABA 619 (2005). There are no conflicts between the court and Mr. Castro-Blanco that would require Mr. Castro-Blanco's recusal pursuant to 28 U.S.C. §455.[6] Moreover, Mr. Castro-Blanco has submitted an affidavit, as required by Rule 53, attesting to the fact that no conflict exists between himself and any party. (ECF docket no. 131). Finally, because the order appointing Mr. Castro-Blanco specifically allows ex parte communications between the Special Master and the court, there is no risk that Mr. Castro-Blanco's relationship with the court will interfere in his duties as Special Master.

---

[6] Defendants state that "disqualification is required in any proceeding where the Special Master's or the Court's impartiality might be reasonablely questioned, or where the Special Master may have personal biases regarding the Court or the parties." Letter of September 19, 2006 (ECF Docket no. 140). Defendants, whether by mistake or design, misread 28 U.S.C. §455. First, there is no allegation that Mr. Castro-Blanco has a bias toward any party, none of whom were previously known to him. Moreover, a Special Master's relationship with the court is only an issue if there is *a different litigation* that the Special Master has before the very same court in which he is serving as a Special Master. In such a case, there is a danger is that the court will be biased in favor of the Special Master's client in *the other litigation*. Such a conflict does not, however, influence the Special Master's role in any way. According to the advisory committee's notes:

> [o]ne potential disqualification issue is peculiar to the master's role. It may happen that a master who is an attorney represents a client whose litigation is assigned to the judge who appointed the attorney as master. Other parties to the litigation may fear that the attorney-master will gain special respect from the judge.

*See* Fed.R.Civ.P. 53(a)(2) and (3) advisory committee's note, 2003 amendment. Thus, simply being an acquaintance of the court is not a ground for the disqualification of a Special Master. The court hopes that, in the future, defendants will exercise more caution before insinuating ethical improprieties which simply do not exist.

11

**Conclusion**

Because the request is untimely and the court finds that there are no grounds for the court to reconsider the order appointing the Special Master, either under Rule 54(b) or pursuant to the courts' plenary power to afford relief from its own orders, the defendants' motion is denied in its entirety.  <u>Defendants are ordered to immediately remit payment to the Special Master in accordance with the July 11, 2006 order and its August 26, 2006 modification.</u>

SO ORDERED.

DATED: Brooklyn, New York
October 18, 2006

_____/s/_____
DORA L. IRIZARRY
United States District Judge