UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ARNOLD RISPLER et al.,                       :
                                             :
                  Plaintiffs,                :         **MEMORANDUM AND ORDER**
                                             :
         -against-                            :         04-CV-1323(DLI)(ARL)
                                             :
SOL SPITZ CO., INC. et al.,                  :
                                             :
                  Defendants.                :
-------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

On July 14, 2006, plaintiffs, Arnold Rispler, Joyce Erkus, Ellen Keller, Oral Walwyn, George Brosseau, William G. Reynolds, Dennis A. Dunlop, Gary Ingoldsby, Claudia McGee and Carol Lanzarone Rippe (collectively referred to as "plaintiffs"), filed a Second Amended Complaint in the above-captioned action. The Second Amended Complaint alleges that the plaintiffs were participants, within the meaning of § 3(7) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(7), of defendant Sol Spitz Co., Inc. Profit Sharing Plan ("the Plan"), which was sponsored and administered by defendant Sol Spitz Co., Inc. ("SSCI"). The sole trustee of the Plan and of another entity, defendant Sol Spitz Co., Inc. Retirement Trust ("the Trust"), is defendant Sheldon Spitz ("Spitz"). The Second Amended Complaint contains fourteen causes of action, ten of which are against Sptiz and SSCI for various violations of their fiduciary duties. Specifically, the Second Claim for Relief alleges that Spitz breached his fiduciary duty by transferring assets of the Plan to Andrew B. Schultz ("Schultz"), Scott M. Zucker ("Zucker"), Chris G. McDonough ("McDonough") and Danziger & Markhoff, LLP (collectively referred to as the "Attorney Defendants"), all of whom are attorneys for Spitz, SSCI, the Plan and the Trust, respectively. Three of the causes of action are against Schultz, Zucker, McDonough and Danziger

& Markhoff alleging breach of fiduciary duty (Third Claim for Relief), equitable damages for aiding Spitz's and SSCI's breach of fiduciary duty as non-fiduciaries (Fourth Claim for Relief) and for common law conversion (Fifth Claim for Relief). In the instant motions, Spitz, the Plan and the Trust move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Second Claim for Relief (ECF Docket No. 146), while Schultz, Zucker and McDonough move, also pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Third, Fourth and Fifth Claims for Relief. (ECF Docket Nos. 144 and 156). Danziger & Markhoff have chosen not to participate in this motion. Spitz, the Plan and the Trust also move to dismiss all of Brosseau's and Rippe's causes of action. For the reasons set forth below, the motions are denied.

## FACTS

The facts, as alleged in the complaint, are as follows. The Trust was formed in 1979. Second Amended Complaint ("Compl.") ¶ 24. The Plan, as well a "Money Purchase Plan," (which is not at issue in this litigation), was formed as part of the Trust, and the Trustees of the Trust (Spitz) were given "sole and absolute" discretion to manage the assets of the Plan and the Money Purchase Plan. Compl. ¶ 25. In 1993, the Money Purchase Plan was terminated, and, in 1995, all its asserts were folded into the Plan. Compl. ¶ 26. The participants in the plan, including plaintiffs, were not provided notice of the termination of the Money Purchase Plan by the trustees. Compl. ¶ 29.

In 1995, the assets of SSCI were sold. Compl. ¶ 30. SSCI continued to exist, however, with Spitz as its sole employee. *Id.* At the time the assets were sold, all the participants in the plan who chose to leave SSCI were told that they would receive a distribution of their benefits from the Plan. Compl. ¶ 31. The distribution never arrived. *Id.* There have been no contributions to the Plan since 1994. Compl. ¶ 33. Although no distributions were made, in 1996, Sptiz sent a letter to the Plan

participants, on Trust letterhead, requiring the participants to elect whether to place their contributions in a "money market account" or a "growth and income" account. Compl. ¶¶ 34-35. The letter appeared to strongly urge participants to place their contributions into the growth and income account. *Id.* Plaintiffs Rispler, Keller and Ingoldsby selected the growth and income account, while Brosseau elected to maintain his funds in the money market account. Compl. ¶¶ 37-38. Sometime later, without notification to the Plan participants, Spitz moved the funds from the participant's selected asset type (money market or income and growth) and changed the firm managing the Plan's assets. According to the Complaint, Sptiz's manipulation led to losses and expenses for the Plan. In 1998, there were $513,134 in losses. In 1999, there were $87,023 in expenses. In 2000, there were $81,210 in expenses, and $28,404 was paid to the Plan participants. In 2001, there were $292,594 in losses and $100,358 in expenses. For 2001, participants were paid $41,129, and $58,391 was paid out as a "corrective distribution." In 2002, the Plan lost $434,780 and incurred expenses of $72,806. Compl. ¶¶ 342-46. In order to make the plan appear to be performing better, Spitz amended the plan to allow him to set the annual valuation date. Compl. ¶ 49.

In July 2003, Spitz gave the Plan's participants, including plaintiffs, an option to withdraw 50% of their vested contributions (valued as of December 31, 2002) so long as they signed a release essentially waiving their rights to the rest of their vested contributions. Compl. ¶¶ 48-49. Under the Plan, the 50% not withdrawn by the participant, including plaintiffs, would be considered forfeited in favor of the Plan's only active member: Spitz. Plaintiffs did not opt for the withdrawal and left their contributions in the Plan. Spitz has failed to respond to document requests related to the Plan. Compl. ¶ 52.

Partially in reaction to Spitz's request that participants forfeit 50% of their contributions to the plan, Plaintiffs retained counsel and began negotiating with Sptiz, SSCI, the Plan and the Trust to make a final distribution of all of the Plan's assets. Spitz was reluctant to do so, and threatened that, if plaintiffs were to commence litigation, he would use the Plan's assets to defend himself and the Plan. Compl. ¶¶ 54, 58. Spitz made the threat both in writing and orally. *Id.* According to Spitz, Danziger & Markhoff advised him that it was appropriate to use Plan assets to defend himself from charges of breaches of fiduciary duty and to defend the Plan against plaintiffs' lawsuit. Declaration of Spitz in Support of Motion to Dismiss ("Sptiz Decl.") ¶¶ 6-7. Spitz took Danziger & Markhoff's advice to heart, and, prior to August 2004, transferred $166,000 to Zucker, $59,670 to Danziger & Markhoff, $12,500 to McDonough. Compl. ¶¶ 63-66. In August 2004, Spitz transferred $548,847 into a separate account for his own benefit, but continued to pay legal fees out of a pooled account consisting of the contributions made by every plaintiff except for Brosseau and Rippe, who had their own segregated accounts. Compl. ¶¶ 66-68. In 2005, Spitz made the following transfers from the pooled account, belonging to plaintiffs: $656,300 to Zucker, $24,000 to Schultz, $44,150 to Danziger & Markhoff, and $44,000 to McDonough. Compl. ¶¶ 69-73. On November 9, 2005, the court ordered the Plan frozen so that no further disbursements could be made. Compl. ¶ 69. With the exception of certain emergency distributions, no distributions have been made to plaintiffs.[1]

---

[1] A distribution of $25,000 was made to plaintiff William Reynolds on May 4, 2006. (ECF Docket No. 108). A distribution in the amount of $7,500 was made to plaintiff Dennis Dunlop on September 25, 2006. (ECF Docket No. 141).

DISCUSSION

*Legal Standard*

In deciding a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6) the court must assess the legal feasibility of the plaintiff's claims. *E.g., Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998); *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). The court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). A motion to dismiss under Rule 12(b)(6) must be denied if the claim has been stated adequately and can be "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968 (2007). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). In ERISA actions, "to survive [a] motion to dismiss, the Complaint must include only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re Marsh Erisa Litigation*, 04 CV. 8157, 2006 WL 3706169, *2 (S.D.N.Y. Dec. 14, 2006)(quoting Fed.R.Civ.P. 8(a)).

<u>Plaintiffs' Second Claim for Relief</u>

Spitz, SSCI, the Plan and the Trust each move to dismiss plaintiffs' Second Claim for relief, claiming that, as a matter of law, Spitz could not have breached his fiduciary duty to the Plan by authorizing the Plan to pay its legal fees, as well as his own, because (1) the payments were made "in good faith" based on the advice giving to him by counsel, (2) the plan is a defendant and must pay its own fees and (3) under the circumstances, the Plan's documents authorize the Plan to pay

5

its own and Spitz's legal fees. Memorandum of Law in Support of Spitz's, SSCI's, the Plan's and the Trust's Motion to Dismiss ("Spitz Memo in Support") 3.

As an initial matter, whether a fiduciary breached his duty to an ERISA plan is inherently a factual analysis, and one that is not properly addressed in a motion to dismiss. *See, e.g. Lively v. Dynegy, Inc.*, 420 F.Supp.2d 949, 952 (S.D. Ill. 2006) ("[d]ismissal under Fed.R.Civ.P. 12(b)(6) is inappropriate if plaintiffs can prove any set of facts showing a breach of fiduciary duty by defendants and whether any relief can be granted under such facts."). Under ERISA Section 404 "[a] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Whether or not Spitz discharged his fiduciary duties "solely in the interest of the participants . . . with . . . care, skill, prudence and diligence" by transferring over 40% of the Plan's pooled assets to his counsel, on their advice, is a factual issue. The fact that counsel– the very same counsel who received a portion of the transferred funds– advised him that such a transfer was permissible is only one factor in the analysis. *Donovan v. Mazzola*, 716 F.2d 1226, 1234 (9th Cir. 1983) ("reliance on counsel's advice is, at most, a single factor to be weighed in determining whether a trustee has breached his or her duty."). The issue of whether Spitz acted "in good faith" when accepting his counsel's advice is likewise an issue of fact. *See Craig v. Bank of New York*, 00 CV. 8154, 2002 WL 1543893, *1 (S.D.N.Y. July 12, 2002). Finally, whether or not Spitz breached his fiduciary duty by moving $548,847 from the pooled account to a new, segregated account, is also an issue of fact that cannot be resolved at this stage of the litigation.

Spitz argues that he could not have breached his fiduciary duties to the Plan because the Plan authorized the payment of attorney fees for his defense. As an initial matter, the court is not convinced that Spitz is properly interpreting the relevant provisions of the plan. Paragraph 9.11 of the Plan documents specifically requires the employer (SSCI), and not the Plan, to pay Spitz's legal fees. *See* Spitz Decl. Exhibit B. Paragraph 7.04 of the Plan reiterates that it is SSCI, and not the Plan, that is required to pay the Plan's expenses, except that "[i]n the event that liability for such expenses is not accepted by the Employer, said expenses shall be paid by the Trust." *Id.* Spitz treats Paragraph 7.04 as a default provision meaning that if SSCI is not able to pay the Plan's expenses, then the Plan must pay its own way, including the legal fees of its trustee, Spitz. However, since the Plan documents do not explain what happens if SSCI cannot accept payment because it is no longer operating, Spitz's interpretation may not be reasonable.[2]

It is within the province of the court to determine whether the plan documents permit the Plan to pay Spitz's expenses. *See Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) ("[u]nder New York law, the initial interpretation of a contract is a matter of law for the court to decide . . . If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence . . . If an ambiguity is found, 'the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract.'")(internal

---

[2] An equally reasonable interpretation of Paragraph 7.04 is that SSCI is required to affirmatively "not accept" (i.e. refuse) a request for payment of expenses, something that did not occur in this case. This interpretation is buttressed by the fact that the Plan's documents do not appear to anticipate the Plan outlasting SSCI. For example, Paragraph 6.02 of the Plan states that, *"the Employer* may terminate this Plan in whole or in part at anytime" *Id.* Termination may occur by "formal written instrument or in operation or upon complete discontinuance of Employer contributions to the plan." Thus, it would appear that the Plan was to have terminated when SSCI stopped making contributions in 1994.

7

citations and punctuation omitted). Absent further briefing and discovery, the court cannot determine whether or not the Plan documents authorize Spitz to pay his legal fees from Plan assets in the absence of SSCI rejecting payment. Absent such authorization, the court must find that Spitz breached his fiduciary duty by using Plan funds to pay his own legal expenses since such payments were not allowed under the plan. *See, e.g. Leigh v. Engle*, 669 F.Supp. 1390, 1415 (N.D. Ill. 1987) ("[nothing in the Trust Agreement or Restated Plan authorizes the trust to pay the expenses of [defendants] in this litigation, and they must reimburse the trust for any expenditures made on their behalf.").

Moreover, if the court finds that Spitz breached his fiduciary duty to the Plan by transferring Plan assets to his attorneys, he obviously would not be entitled to reimbursement from the Plan. *Martinez v. Barasch*, 01 CV. 228929, 2006 WL 435727, *4, (S.D.N.Y. Feb. 22, 2006) ("[c]ourts have construed [29 U.S.C. § 1110(a)] to flatly bar a fiduciary who has been found in breach of its duties from 'recouping its expenses from the very plan it injured.'") (*quoting State Street Bank and Trust Co. v. Salovaara*, 326 F.3d 130, 138 (2d Cir. 2003). A finding that Spitz breached his fiduciary duty by transferring the Plan's pooled assets to counsel, ostensibly to represent himself and the Plan, would require Spitz to reimburse the Plan for at least the portion of the fees expended in his own defense. *See Morrissey v. Segal*, 526 F.2d 121, 126 (2d Cir.1975).

<u>Plaintiffs' Third Cause of Action</u>

The Attorney Defendants move to dismiss plaintiffs' third cause of action on the grounds that they could not have violated any fiduciary duty to plaintiffs since, as a matter of law, they are not fiduciaries and had no such duty. However, under the facts as alleged in the complaint, the Attorney Defendants are fiduciaries and, until the Attorney Defendants can demonstrate otherwise, plaintiffs'

cause of action is established.

The determination of whether a person is a fiduciary is fact-based, and cannot be determined in a motion to dismiss. *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 241 (2d Cir. 2002) (finding that a complaint could survive a motion to dismiss based on the bare allegation that a defendant was a fiduciary); *Rosenburg v. International Business Machines Corp.*, 06 CV. 0430, 2006 WL 1627108, *5 (N.D.Cal., June 12, 2006) ("[w]hether IBM assumed fiduciary status . . . will require a searching inquiry into the facts and is therefore inappropriate for resolution on a motion to dismiss."). Under ERISA, a party is a fiduciary with respect to a plan to the extent that:

> (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). This provision has been construed broadly to encompass numerous entities, including service providers. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (finding that ERISA "expand[s] the universe of persons subject to fiduciary duties"); *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) ("Congress intended ERISA's definition of fiduciary to be broadly construed.") (internal quotation marks omitted); *Westchester Teamsters Local 456 v. Fleet Nat. Bank*, 02 CV. 6664, 2006 WL 2385261 *5 (S.D.N.Y., Aug. 18, 2006) ("[c]ourts have construed broadly the definition of fiduciary contained in ERISA.").

In general, a service provider becomes a fiduciary when it assumes de facto control over fiduciary functions. *See* 29 C.F.R. § 2509.75-5 (D-1); *c.f. F.H. Krear & Co. v. Nineteen Named*

*Trustees*, 810 F.2d 1250, 1259-60 (2d Cir. 1987) (plan attorney, although a fiduciary under other law, is not an ERISA fiduciary where he merely gave legal advice to trustees). The determination as to when a service provider assumes de facto control is fact-intensive: persons or entities who are not identified as fiduciaries can be de facto fiduciaries if they have discretionary authority over assets in an ERISA plan. *Bouboulis v. Transport Workers Union of America*, 442 F.3d 55, 64-65 (2d Cir. 2006); *F.H. Krear & Co.*, 810 F.2d at 1259-60 ("if the factual situation in a particular case falls within [the statute's definition] such persons would be considered fiduciaries"); *Chao v. Hochuli*, 244 F.Supp.2d 92, 96-97 (E.D.N.Y. 2003) (authority to dispose of plan assets creates fiduciary status).

The Attorney Defendants correctly assert that instances of attorneys "crossing the line" from service providers to fiduciaries are few and far between. *But see Bouton v. Thompson*, 764 F. Supp. 20 (D. Conn. 1991) (attorney's motion to dismiss denied where the complaint alleged that he exercised discretion over accounts containing plan assets). However, allegations of fiduciary breach with the breadth of that claimed by plaintiffs are also uncommon: plaintiffs contend that over 40% of the Plan's pooled assets, over $900,000, has been transferred to counsel. While it is possible that these assets of the Plan may have paid for legitimate legal services rendered prior to the date the transfer, thus transforming the funds from Plan assets to payments for services, it is equally plausible that such transfer was unauthorized and constituted a breach of fiduciary duty to plaintiffs as well the other plan participants. At the minimum, plaintiffs have sufficiently stated a cause of action and they are entitled to discovery on their claims.[3] As such, it is premature for the court to determine

---

[3] In an effort to demonstrate that Spitz's use of Plan assets to pay counsel was done on the advice of counsel, Spitz has annexed to his declaration a copy of an invoice for legal services rendered by Danziger & Markhoff from April 21, 2004 through July 27, 2004. *See*

whether the Attorney Defendants are holding assets of the Plan, and, in so doing, are exercising the "authority or control respecting management or disposition of its assets" necessary to establish fiduciary status. *Mason Tenders Dist. Council Pension Fund v. Messera*, 958 F.Supp. 869, 881 (S.D.N.Y. 1998) ("[t]hus, while attorneys to a plan are not ordinarily viewed as ERISA fiduciaries if they merely provide ordinary professional advice, they may nevertheless become liable under ERISA when they "cross the line" by exercising discretionary authority or control."); *see also David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1133-1134 (10th Cir. 2005) (finding accountant to be fiduciary and noting that, under ERISA's statutory scheme, a party that has deposited plan assets in an account belonging to them is "automatically in a position of confidence by virtue of that control, and as such they are obligated to act accordingly.").

Plaintiffs' Fourth Cause of Action

Plaintiffs' fourth cause of action seeks to hold the Attorney Defendants liable for Spitz's fiduciary breaches. Courts have held that parties who knowingly participate in fiduciary breaches may be liable under ERISA to the same extent as the fiduciaries. *See Lowen v. Tower Asset Management, Inc.,* 829 F.2d 1209, 1220 (2d Cir. 1987). Similarly, ERISA's statutory scheme authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice

---

Spitz Decl. Exhibit C. The invoice appears to cover all the legal work necessary to defend both Spitz and the Plan during those three months, including "substantial research of cases regarding payment of legal fees from plan assets." *Id.* The total amount due on the invoice is $10,960. *Id.* No other justification has been provided for the additional legal work the Attorney Defendants were engaged in justifying the tremendous legal fees paid from Plan assets through November of 2005. Since the Attorney Defendants' status as plan fiduciaries is dependant upon whether they were actually performing legal services or were merely controlling Plan assets transferred to them by Spitz (as well as other factors) the court will give plaintiffs wide latitude to discover exactly what legal services were provided by the Attorney Defendants. The court is not concerned about a potential "flood" of ERISA litigation seeking to hold attorneys liable as non-fiduciaries since the facts of this case, including Spitz's alleged threats to dissipate the Plan's assets if Plan participants instituted litigation, are apparently unique.

11

which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). The Supreme Court has found that this provision, ERISA § 502(a)(3), permits beneficiaries and participants to sue non-fiduciaries for equitable damages. *Harris Trust & Savs. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000); *Carlson v. Principal Financial Group*, 320 F.3d 301, 308 (2d Cir. 2003). One way for a non-fiduciary to be a proper defendant under ERISA is by demonstrating that the non-fiduciary knew of that the fiduciary's actions violated the terms of the Plan. *See Harris Trust*, 530 U.S. at 251. According to the complaint, the Attorney Defendants had knowledge that Spitz was transferring Plan assets in violation of the Plan. Therefore, the plaintiffs have stated a cause of action against the Attorney Defendants for which they are entitled to equitable relief and disgorgement by defendants. Compl. 112-114; *see also L.I. Head Start Child Development Services, Inc. v. Frank*, 165 F.Supp. 2d 367, 371 (E.D.N.Y. 2001).

The Attorney Defendants erroneously argue that, even if they are proper non-fiduciary defendants, they cannot be made to disgorge the Plan assets they have, since that would construe monetary damages. In *Great-West Life & Annuity Insurance Company v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed. 2d 635 (2002), the Supreme Court stated that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendants' possession." *Id.* The Court specifically held that a "claim to specific property (or its proceeds) held by the defendant accords with the restitution we describe as equitable today." *Id.* at 715. Under the logic of *Great-West Life*, plaintiffs in an ERISA action against non-fiduciaries may seek, as an equitable remedy, disgorgement of payments when the money has remained with the non-fiduciary defendant and can

be identified by plaintiff. In this case, plaintiffs have alleged direct transfers of Plan assets to the Attorney Defendants in violation of the Plan documents and not as payment for legal services rendered. Plaintiffs are seeking the return of those funds. Therefore, the relief sought in this case clearly comports with the equitable restitution of specific property permissible under ERISA § 502(a)(3). Numerous cases have found that disgorgement of funds is a form of equitable relief. *See, e.g. Unum Life Ins. Co. of America v. Lynch*, 04 CV. 9007, 2006 WL 266562, *3 (S.D.N.Y. Jan. 31, 2006) (finding that equitable restitution exists where the defendant "has received income that is totally traceable to the funds belonging to plaintiff" even where the defendant spent the funds belonging to plaintiff); *Serio v. Black, Davis & Shue Agency, Inc.*, 05 CV. 15, 2005 WL 3642217, *7 (S.D.N.Y., Dec. 30, 2005) (in a non-ERISA case, finding that disgorgement was a form of equitable relief where the plaintiff "is asserting a claim . . . of entitlement to a specific fund.").

Moreover, requiring the Attorney Defendants to return any Plan funds not earned in legal fees is an equitable, rather than a legal, remedy permissible under ERISA because plaintiffs' claim is akin to a cause of action for unjust enrichment, an equitable claim. The plaintiffs' claims are startlingly simple: that the Attorney Defendants were unjustly richly rewarded for services they never actually provided. *See Pereira v. Farace*, 413 F.3d 330, 341 (2d Cir. 2005)(distinguishing between permissible § 502(a)(3) damages measured by a defendant's gain and impermissible § 502(a)(3) damages measured by the plaintiff's loss). The plaintiffs are not alleging that the Attorney Defendants acted negligently or breached a contract, causes of action which would require legal damages impermissible under § 502(a)(3). *C.f. Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 321-322 (2d Cir. 2003) (no claim for damages in equity where "[t]he moneys sought by the Plaintiffs were never in [defendant]'s possession; rather, they are simply consequential damages resulting from

13

[defendant]'s alleged negligence."); *New York Dist. Council of Carpenters Pension Fund v. Savasta*, 99 CV. 11362, 2005 WL 22872, *2 (S.D.N.Y., Jan. 04, 2005) (no equitable damages where "the fees were paid for services rendered by defendants pursuant to their alleged agreement with the Fund.").

### Plaintiffs' State Law Claims

The Attorney Defendants also move to dismiss plaintiffs' state law claim for conversion. Under New York law, a "conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50, 860 N.E.2d 713, 827 N.Y.S.2d 96 (2006). Plaintiffs allege that Spitz transferred the funds to the Attorney Defendants without authorization. Spitz, for his part, continues to allege that the Plan documents permitted the transfers and, therefore, the transfers were authorized. However, because factual issues exist as to whether the Plan documents actually allow Spitz to transfer the assets if SSCI has not refused payment, and plaintiffs have stated a claim upon which relief can be granted, defendants motion to dismiss on this ground is denied. *See e.g. Reznor v. J. Artist Management, Inc.*, 365 F. Supp. 2d 565, 580 (S.D.N.Y. 2005).

### Claims by Brosseau and Rippe

Defendants also request the dismissal of the claims of plaintiffs Brosseau and Rippe on the theory that, because their contributions to the Plan have been segregated, none of their assets were transferred to the Attorney Defendants. Rippe and Brosseau have stated claims against Spitz as a fiduciary and against the Attorney Defendants for mismanagement of the Plan. These claims are strong enough to survive the motion to dismiss for the reasons stated above. Therefore, the court denies this part of defendants' motion.

## CONCLUSION

For the reasons set forth above, defendants' motions are dismissed in their entirety. The parties are directed to proceed with discovery in accordance with the schedule established by United States Magistrate Judge Arlene R. Lindsey.


SO ORDERED

DATED:    Brooklyn, New York
          June 6, 2007

                                                          /s/
                                             DORA L. IRIZARRY
                                          United States District Judge